IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JACK GOLDMAN,

Plaintiff,

v.

TRINITY MEDICAL SCIENCES UNIVERSITY UNLIMITED LTD, et al.,

Defendants.

CIVIL ACTION FILE
NO. 1:25-CV-6096-TWT

**OPINION AND ORDER**

This is a breach of contract case. It is before the Court on Defendant Trinity Medical Sciences University Unlimited Ltd.'s ("Trinity's") Motion to Dismiss [Doc. 12]. As explained below, Defendant Trinity's Motion to Dismiss [Doc. 12] is GRANTED.

## I. Background[1]

This case centers around certain alleged misrepresentations and omissions made by a medical school that caused injury to one of its students. Defendant Trinity is a private offshore medical corporation. (Compl. ¶ 7 [Doc. 1]). Plaintiff Jack Goldman was a medical student at Defendant Trinity's medical school at all times relevant to the litigation. (*Id.* ¶¶ 6, 9). The 20 unnamed Defendants are employees or agents of Defendant Trinity that

[1] The Court accepts the facts as alleged in the Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

contributed to the harm suffered by the Plaintiff. (*Id.* ¶ 8).

Before attending medical school at Defendant Trinity's medical institution, the Plaintiff was a citizen of New York. (*Id.* ¶ 10). When the Plaintiff was considering his medical school options, Defendant Trinity pursued the Plaintiff via digital marketing because of his medical test scores, student loans, and finances. (*Id.* ¶ 11). In April 2016, staff for Defendant Trinity traveled to New York to recruit the Plaintiff into attending Defendant Trinity's institution. (*Id.* ¶ 12). During the meeting, the Plaintiff advised the administrator for Defendant Trinity that he was seeking a medical school that would provide residency opportunities in New York because he intended to practice medicine in the state after graduation. (*Id.* ¶ 13). He also disclosed that he would need disability accommodations from Defendant Trinity to be successful. (*Id.* ¶ 15). The administrator provided affirmative assurance to the Plaintiff that residencies in New York were available for Defendant Trinity's students. (*Id.* ¶ 14). After the meeting, the Plaintiff received a letter from Defendant Trinity informing him that disability accommodations have been granted in all assessments. (*Id.* ¶ 16).

At some point, the Plaintiff applied to Defendant Trinity. In response, Defendant Trinity offered the Plaintiff a scholarship because of his Medical College Admission Test, or MCAT, scores. (*Id.* ¶ 17). Based on these assurances, the Plaintiff ultimately chose to attend Defendant Trinity's St.

Vincent campus to pursue a Doctor of Medicine degree due to the assurances provided and was admitted for the Fall 2016 semester with disability accommodations in place. (*Id.* ¶ 18). At this time, the Plaintiff's anticipated graduation date was Spring 2020. (*Id.* ¶ 19).

After enrollment, the Plaintiff successfully finished the first half of medical school. (*Id.* ¶ 20). To progress in his studies, it was Defendant Trinity's policy that medical students were required to pass two sequential examinations before progressing to the clinical science phase of the degree program. (*Id.* ¶ 21). But it repealed its requirement in January 2019. (*Id.* ¶ 22). Nonetheless, Defendant Trinity still advised the Plaintiff to pursue two, optional, examinations before progressing to the clinical science phase of the degree program. (*Id.* ¶ 23). This conversation induced the Plaintiff to postpone the clinical science phase of his education. (*Id.* ¶ 24).

Around this time, the Plaintiff began preparing for the National Board of Medical Examiners ("NBME") exam. (*Id.* ¶ 34). In order to be successful on the exam, the Plaintiff sought disability accommodations from the NBME. (*Id.* ¶ 35). In order to obtain approval for such accommodations, the Plaintiff was required to have his medical school provide documentation of his current accommodations to the NBME board. (*Id.* ¶ 36). When the Plaintiff sought this information from Defendant Trinity, the school failed to provide the requisite information because it claimed that providing documentation for the NBME

exam was out of their purview. (*Id.* ¶¶ 37-38). Ultimately, the NBME board denied the Plaintiff disability accommodations as he did not secure the required documentation from Defendant Trinity. (*Id.* ¶ 39). After this result, Defendant Trinity advised the Plaintiff to appeal this denial, which he did, but he received notice that the appeal failed in the Spring of 2020. (*Id.* ¶¶ 40-41).

While this ordeal was ongoing, the Plaintiff resided in Georgia as Defendant Trinity required students to live in the state during their clinical semesters. (*Id.* ¶¶ 27, 42). During this time, the Plaintiff was not attending classes at Defendant Trinity but the school nonetheless charged the Plaintiff for tuition for the ten semesters he was not registered for classes. (*Id.* ¶¶ 43-45). In response to these charges, the Plaintiff needed to take out loans to pay for these semesters as he was required to be an active student to be eligible for the NBME examination. (*Id.* ¶ 46). Defendant Trinity only informed the Plaintiff that such charges to his account were standard procedure while a student awaited taking the NBME examination. (*Id.* ¶ 47). Indeed, taking the NBME examination as early as the Plaintiff did was optional when the Plaintiff enrolled in 2019 as students may have proceeded to clinical education before taking the exam. (*Id.* ¶ 48).

Unfortunately, the Plaintiff's injuries do not end here. After moving to Georgia to pursue his clinical science education with Defendant Trinity, he was informed some time in 2020 that he would not be able to attend medical

residencies in New York despite assurances from Defendant Trinity before attending medical school. (*Id.* ¶¶ 27-29). Defendant Trinity did not notify the Plaintiff that its students are not eligible for residency in New York due to New York's practice eligibility rules, consistent with Defendant Trinity's practice not to inform its students of this fact until they are a third- or fourth-year medical student. (*Id.* ¶¶ 30-31). This is because, with prior knowledge, Trinity had no intention or ability to provide the Plaintiff with a medical residency in New York. (*Id.* ¶ 33).

The Plaintiff alleges that the Defendants' false and misleading statements induced the Plaintiff to attend Defendant Trinity's institution, causing substantial financial injury. (*Id.* ¶¶ 32, 51). To remedy this injury, the Plaintiff filed his Complaint with the Court. (*See generally id.*). The Complaint contains five state and common law claims, incorporating a plea for punitive damages and attorney's fees in each claim, against the Defendants: (1) violation of the Georgia Uniform Deceptive Trade Practices Act ("UDTPA"), O.C.G.A. § 10-1-370, et seq.; (2) breach of contract; (3) intentional misrepresentation; (4) negligent misrepresentation; and (5) silent fraud. (*See id.* ¶¶ 56-108). In response, Defendant Trinity filed the Motion to Dismiss before the Court. (*See generally* Def. Trinity's Mot. to Dismiss [Doc. 12]).

## II. Legal Standards

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## III. Discussion

Defendant Trinity seeks dismissal of each claim within the Complaint. Because the all of the Plaintiff's claims are time-barred, necessitating dismissal, the Court need not address any of the remaining arguments.

"State statutes of limitations are substantive law, and under the *Erie* doctrine, a federal court sitting in diversity must apply the controlling substantive law of the state." *Wilson v. Hearos, LLC*, 128 F.4th 1254, 1264 (11th Cir. 2025) (citation omitted). Thus, the Court turns to Georgia law to determine the applicable statutes of limitation. Under Georgia law, a plaintiff must bring a claim under the UDTPA within four years,[2] a claim for breach of contract within six years (for written contracts) or four years (for oral or parol contracts),[3] and a claim for any fraud-based actions within four years.[4] Fraud-based claims are unique in that the statutes of limitation only begin to run upon discovery of the fraud, rather than from the initial violation. O.C.G.A. § 9-3-96; *cf. Wallace v. Bock*, 279 Ga. 744, 747 (2005) ("On a contract claim, the statute of limitations begins to run at the time of its alleged breach." (citation

---

[2] *See Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1204-05 (11th Cir. 1997) (discussing the applicable statute-of-limitations for a UDTPA violation under Georgia law and concluding that the statute carries an implicit four-year limitations period).

[3] *Harris v. Baker*, 287 Ga. App. 814, 868 (2007) (citing O.C.G.A. § 9-3-24, then citing O.C.G.A. § 9-3-25).

[4] *Coe v. Proskauer Rose, LLP*, 314 Ga. 519, 524 (2022) (citing O.C.G.A. § 9-3-31).

omitted)). Here, because the Plaintiff's UDTPA claim is premised on certain fraudulent misrepresentations made by admissions officers of Defendant Trinity, this discovery rule applies.

Turning to the Complaint, the Court looks to the specific time periods that each breach occurred. The Plaintiff alleges that the Defendants are liable for breach of contract because Defendant Trinity was charged tuition for the semesters where he was not enrolled in any classes, contrary to the terms present within his admission letter. (Compl. ¶¶ 77-80). Without much help from the drafting of the Complaint, the Court can glean that Defendant Trinity began charging the Plaintiff for tuition in this manner from "Summer 2019. (*See id.* ¶¶ 42-45). Even if the contract was a written contract, this would mean that the Plaintiff would have had to file his claim with a state or federal court by Summer 2025. Because the Plaintiff filed his Complaint on October 24, 2025, the Plaintiff's breach of contract claim appears to be untimely. (*See generally* Compl.).

A similar issue arises from the Plaintiff's fraud-based claims. The Plaintiff alleges that the Defendants misrepresented (1) the feasibility of obtaining a residency placement in New York and (2) the need to pay tuition for semesters in which he was not enrolled in classes.[5] (*See id.* ¶¶ 64, 84, 92,

---

[5] Curiously, despite including claims that the Defendants misrepresented their ability to grant him disability accommodations for all of his exams, the Plaintiff does not list such statements as proof of

102). Despite its poor drafting, the Court can understand from the Complaint that the Plaintiff only became aware of his inability to attend residency in New York in 2020. (*Id.* ¶ 28). What month or year? The Complaint does not answer that. In any case, this discovery was the latest-in-time because the tuition misrepresentations were discovered in "Summer 2019." Giving the Plaintiff the benefit of the doubt, even if the Plaintiff discovered the residency misrepresentations on December 31, 2020, the claims would still be untimely as the Plaintiff failed to file his Complaint by December 31, 2024.[6]

But the issue of timeliness is not resolved here. Before the Plaintiff brought his Complaint to this Court, he brought an identical complaint before another federal district court within the Eastern District of New York on April 20, 2023, well before his claims were untimely. *See Goldman v. Trinity Sch. of Medicine through Bd. of Trs.*, 2024 WL 2832885, at *2 (E.D.N.Y. Jun. 4, 2024). The court ultimately dismissed the Plaintiff's lawsuit for want of personal jurisdiction, without prejudice. *Id.* at *8. This decision was subsequently

---

misrepresentations made by the Defendants. The Court will not rewrite the Complaint and add them here.

[6] The Plaintiff's argument that fraudulent concealment tolls the statute of limitations is resolved under this reasoning. In his response brief, the Plaintiff argues that the Court should only run the statute of limitations period from "2020" because of Defendant Trinity's fraudulent concealment of the truth of the Plaintiff's chances at a New York residency placement. (Pl.'s Resp. Br. in Opp'n to Def. Trinity's Mot. to Dismiss, at 17-18 [Doc. 14]). Whether this is true or not, the Court has already extended the Plaintiff's fraud-based claims to the extent of which the Complaint allows, imposing a date of December 31, 2020. Even when doing so, the argument fails to make the claims timely.

affirmed by an unpublished decision by the Second Circuit. *See generally Goldman v. Trinity Sch. of Medicine through Bd. of Trs.*, 2024 WL 1099088 (2d Cir. Apr. 14, 2025).

The Plaintiff arguess that Defendant Trinity's argument "ignores a critical and well-established principle: when a plaintiff timely files an action in federal court and that action is dismissed for lack of jurisdiction, the original filing date governs for statute-of-limitations purposes upon refiling." (Pl.'s Resp. Br. in Opp'n to Def. Trinity's Mot. to Dismiss, at 18-19). Curiously, the Plaintiff fails to cite any authority for this principle. In any case, the "critical and well-established principle" that the Plaintiff asserts does not magically convert his untimely claims into timely ones in the state of Georgia. Georgia law has enumerated several situations where the tolling of the limitations period is permitted, and the "critical and well-established principle" is not one such situation.[7]

[7] *See* O.C.G.A. § 9-3-90 (titled "Persons Under Disability"); O.C.G.A. § 9-3-91 (titled "Disabilities Occurring After Accrual of Right"); O.C.G.A. § 9-3-92 (titled "Unrepresented Estate"); O.C.G.A. § 9-3-93 (titled "Creditors of Unrepresented Estate"); O.C.G.A. § 9-3-94 (titled "Absence of Defendant from State"); O.C.G.A. § 9-3-95 (titled "Joint Action; Party Under Disability"); O.C.G.A. § 9-3-96 (permitting the "discovery rule" for fraud mentioned previously); O.C.G.A. § 9-3-97 (titled "Extension of Limitation Period with Respect to Counterclaims and Cross-Claims); O.C.G.A. § 9-3-97.1 (titled "Tolling of Limitation Period for Bringing Medical Malpractice Action"); O.C.G.A. § 9-3-98 (titled "Application to Tort and Contract Actions"); O.C.G.A. § 9-3-99 (titled "Tolling of Limitation Period for Tort Arising from a Crime").

Perhaps the Plaintiff meant to say that Georgia law permits the *renewal* of such actions after dismissal from another court? Even if this were the case, the Plaintiff would still be wrong both under the statutory and common-law rules present within Georgia. Georgia's renewal statute provides the following:

> When any case has been commenced in either a state or federal court within the applicable statute of limitations *and the plaintiff discontinues or dismisses the same*, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later, subject to the requirement of payment of costs in the original action as required by subsection (d) of [O.C.G.A.] 9-11-41; provided, however, if the dismissal or discontinuance occurs after the expiration of the applicable period of limitation, this privilege of renewal shall be exercised only once.

O.C.G.A. § 9-2-61(a) (emphasis added).

It also provides that the renewal provided by O.C.G.A. § 9-2-61(a) also applies when "an action is discontinued or dismissed without prejudice for lack of subject matter jurisdiction in either a court of this state or a federal court in this state." O.C.G.A. § 9-2-61(c). The Plaintiff's previous action fails to invoke either provision because the district court dismissed the action for want of personal jurisdiction. *See Goldman*, 2024 WL 2832885 at *8. This is not a situation where the Plaintiff voluntarily dismissed his own lawsuit. *See* O.C.G.A. § 9-2-61(a). Neither is it one where a Georgia state or federal court dismissed the action. O.C.G.A. § 9-2-61(c). Neither is it one where the dismissal was for want of subject-matter jurisdiction. *Id.* Thus, there is no statutory basis

for the Plaintiff's unsubstantiated "critical and well-established principle."

Even if the Plaintiff satisfied having a statutory basis, the Plaintiff would fail to satisfy the common-law hurdle. Georgia has several "extra-statutory, common law rules that have governed Georgia renewal actions for more than a century." *Porter Pizza Box of Fla., Inc. v. Pratt Corrugated Holdings, Inc.*, 685 F. Supp. 3d 1376, 1382 (N.D. Ga. 2023). However, the Georgia Supreme Court has explained that the right of renewal is inapplicable where the original action was "'a mere nullity,' such as when the court did not have jurisdiction." *Id.* (quoting and citing *Moss v. Keesler*, 60 Ga. 44, 49 (1878)). Because the Eastern District of New York dismissed the action on the basis of personal jurisdiction, this applies here and dooms the Plaintiff's argument. *See Goldman*, 2024 WL 2832885 at *8.

But what if the Plaintiff intended to seek equitable tolling of his claims? At the federal level, equitable tolling "pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Fedance v. Harris*, 1 F.4th 1278, 1284 (11th Cir. 2021) (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 11 (2014) (quotation marks omitted)). But no such analogue exists at the state level. Indeed, the Georgia Supreme Court has explicitly rejected the existence of equitable tolling, at least in the context of habeas corpus cases. *See Stubbs v. Hall*, 308 Ga. 354, 369-74 (2020). And,

consistent with the Plaintiff's approach with argumentation on this point, he has failed to provide any authority to support his argument. Thus, the Court will not infringe upon Georgia law by considering the application of equitable tolling where no such doctrine exists.

Because each of the Plaintiff's claims are untimely under Georgia law and no tolling or renewal statute provides any relief, the Court holds that every claim brought by the Plaintiff is time-barred against all of the Defendants. Accordingly, the Court is due to dismiss the Complaint with prejudice. *See ALR Oglethorpe, LLC v. Henderson*, 336 Ga. App. 739, 745 (2016) (holding that a dismissal on the basis of the expiration of the statute-of-limitations period is an adjudication on the merits).

## IV. Conclusion

For the foregoing reasons, Defendant Trinity's Motion to Dismiss [Doc. 12] is GRANTED. The Clerk is directed to enter judgment and close the case.

SO ORDERED, this 28th day of August, 2026.

Thomas W. Thrash

THOMAS W. THRASH, JR.
United States District Judge